DAVID W. RIZK – CABN # 284376
RIZK & SHEARER LLP
466 Geary Street, Suite 201
San Francisco, CA 94102
Telephone: (415) 517-9044
Email: drizk@rs-llp.com

Counsel for Defendant Alfozan

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ABDULRAHMAN ALFOZAN,<br>Defendant. | Case No. 3:26-CR-539 VC (AGT)<br>**DEFENDANT'S STATUS STATEMENT** |

The defense respectfully submits this status statement in advance of the initial case management conference scheduled for November 17, 2026.

**I. Background**

On October 9, 2026, Mr. Alfozan was arrested, his residence was searched, and several electronic devices were seized. He was charged by Complaint with a single count of violating the Wiretap Act, 18 U.S.C. § 2511(1)(b), for allegedly placing a surreptitious recording device in a conference room at his former employer OpenAI's office. ECF No. 1. Mr. Alfozan pleaded not guilty.

Beginning with its initial press release, the government began suggesting that Mr. Alfozan—a Saudi national who is a permanent resident, attended M.I.T., and has resided in the U.S. for the last 15 years—may have been engaged in some form of espionage. For example, the Director of National Intelligence said:

> This serious situation underscores why winning the global super intelligence race is a national security prerogative — and why President Trump's leadership in creating the Super Intelligence Force is so important. I thank Director Patel and our FBI partners for their diligence and swift action. The intelligence community remains committed to safeguarding America's cutting-edge intellectual property from foreign threats.

*See, e.g.,* U.S. Dept. of Justice, Press Release, Oct. 13, 2026 (available online). Weeks later, an anonymous law enforcement official told the *Wall Street Journal* that "[t]he Federal Bureau of Investigation is looking at potentially adding an economic espionage charge against Abdulrahman Alfozan." *See* Lawler and Au-Yeung, *Wall Street Journal,* "FBI Explores Espionage Case Against Saudi OpenAI Suspect," Oct. 24, 2026.

The government expanded on these themes in its written detention motion, arguing that he is a serious flight risk to Saudi Arabia. For example, the government explicitly compared this case to *United States v. Abouammo*, a recent prosecution in this district of Saudi nationals under 18 U.S.C. § 951 (acting as an unregistered agent of a foreign government), ECF No. 12 (Gov't Det. Memo.) at 2 & fn. 1; by repeatedly stating that the alleged conduct "put our national security at risk," *id.* at 4, 8, 11; and by warning ominously that the government's investigation is "ongoing and may result in additional charges." *Id.* at 5, 8. Government counsel then reiterated those warnings at the detention hearing to great effect on the magistrate court, arguing for example that "the gravamen" of the government's argument concerning risk of flight was "connections to the Saudi government and ties to Saudi Arabia," and warned again that "it's no secret to anyone that there is a potential for additional charges." ECF 17 (Oct. 19, 2026 Tr. of Proceedings), at 29-30. The magistrate largely accepted those concerns, worrying that the Saudi government might be "protecting their asset." *Id.* at 17. Mr. Alfozan's prior counsel's unusual proposal that the Saudi government would sign a bond for him in any dollar amount unfortunately and inadvertently fueled the magistrate's suspicions. Mr. Alfozan was detained. ECF No. 16.

## II. Discovery

Mr. Alfozan's prior defense counsel made a discovery request to the government at the initial appearance on October 13, 2026. Undersigned counsel substituted in after the bail proceedings on Thursday, October 29, 2026, and repeated the request for discovery in writing and indicated a willingness to sign the model protective order immediately. The government sent a modified protective order on Saturday October 31, 2026, and counsel agreed to it on Monday, November 2, 2026, while

reserving some objections (see below) in order to facilitate speedy disclosure by the government. The Court signed the protective order the same day it was filed on November 3, 2026. ECF No. 21.

At the defense's request, government counsel agreed to meet and confer on November 3, 2026, regarding the state of discovery. During the call, government counsel acknowledged that the FBI investigation had not uncovered *any* new evidence that would support any additional charges, including either a violation of § 951 for being an unregistered foreign agent, or for any trade secret theft in violation of 18 U.S.C. § 1832. Of course, the government cautioned charges could be brought some time in the future. But government counsel acknowledged that if there were supporting evidence, new charges would have been brought when Mr. Alfozan was indicted. Instead, Mr. Alfozan was indicted solely on the Wiretap Act count that was the subject of the Complaint. ECF No. 18. Defense counsel declined to waive time when Mr. Alfozan was arraigned on the new Indictment on November 6, 2026, because at that time nearly 30 days into the case the government still had not produced any discovery—and had succeeded in detaining the defendant.

The government eventually made its first production on November 9, 2026. The production includes hundreds of pictures from Mr. Alfozan's residence, some records concerning OpenAI's reports of its investigation into Mr. Alfozan and related OpenAI Codex data, Mr. Alfozan's employment file, roughly 20 pages of FBI reports concerning some contacts with OpenAI and brief interviews with Mr. Alfozan and his wife[1], some photographs and limited surveillance footage, and grand jury subpoena returns consisting of data from financial firms, Google, Apple, among other things.

There is no evidence in the government's first production to support more serious charges. Notably, there is no documentation of any additional government investigation into Mr. Alfozan's alleged ties to the Saudi government; no records or FBI reports for example, concerning a single investigative step the government took to assess whether Mr. Alfozan has had any direct contacts with anyone suspected of espionage or connected to Saudi intelligence services; no evidence the government investigated any of the contacts in Mr. Alfozan's cellphone or other devices; no apparent investigation

[1] Government counsel has repeatedly confirmed that Mr. Alfozan's wife is not accused or suspected of any wrongdoing whatsoever, including when she departed the country after her husband's arrest just before her student visa expired.

into whether he received any suspicious payments from Saudi-affiliated sources; no evidence of any illicit or suspicious technical assistance or support from any foreign government, or indeed, anyone else.

There is also no discovery that counsel would expect from the government to support a potential trade secret charge. Forensic images of the devices seized by the government (laptops, cell phones, alleged recording device), and the alleged recordings themselves have not been produced to the defense—and as of this filing the government has not been able to identify or agree to any date by which they will be produced. There are no formal forensic or technical reports concerning any of the devices or recordings, and no FBI reports whatsoever concerning the government's review of recordings, which government counsel has acknowledged is ongoing. There is also no evidence Mr. Alfozan approached a competitor or had an intent to enrich a third party, or even that the government has conducted any investigation to support such a theory. Although the government has promised to produce FBI reports of interviews with "some potential witnesses," to date, there is no evidence of any significant consultation between the government and OpenAI about the contents of any specific recordings to identify any alleged trade secrets.

Defense counsel again conferred with the government on Friday, November 13, 2026. When asked about any evidence to support more serious charges on Friday, government counsel again candidly acknowledged that no such new evidence has emerged. However, government counsel was unable to answer directly any of defense counsel's questions about documentation or evidence concerning the government's investigation into Mr. Alfozan's suspected ties to the Saudi government, or any trade secret theft. Assuming the government did conduct substantial investigation, which seems quite likely, the absence of evidence against Mr. Alfozan is exculpatory, and the record of the government's inquiries must be disclosed immediately.

While the government has promised to make another production this week including search warrant applications, and more grand jury returns, it has not agreed to any timeline to produce: (1) all exculpatory evidence in the government's possession; (2) all evidence in the government's possession of its investigation into Mr. Alfozan's ties to the Saudi government, including any alleged unregistered foreign agent violation; (3) all evidence in the government's possession of its investigation into any alleged trade secret theft; (4) imaged copies of the seized digital devices, and any government or expert

analyses of them; and (5) imaged copies of the alleged recording devices, copies of the alleged recordings themselves, and any government or expert analyses of them.

The defense appreciates government counsel's candor concerning the state of the evidence and further charges. Defense counsel has also been direct with the government about the defense's intent to surface the truth expeditiously. For example, during the November 13 meet-and-confer call, the government revealed to defense counsel that the FBI had lost access to Mr. Alfozan's cellphone weeks ago when a power failure at an FBI facility over the weekend following Mr. Alfozan's arrest allowed the cellular device to run out of power and lock. Mr. Alfozan immediately agreed voluntarily to provide the FBI with biometric access to his cellphone.

Absent greater charges or evidence of any covert tie to the Saudi government, Mr. Alfozan should not be detained on the current record. Mr. Alfozan will reserve most of his arguments concerning bail for the magistrate court in the first instance. But note that for the existing § 2511 charge alone, for a defendant with no criminal history like Mr. Alfozan, the U.S. Sentencing Guidelines sentencing range is 0-6 months, or 6-12 months if the government can prove the purpose was for "commercial gain or economic gain." U.S.S.G. § 2H3.1. In other words, the criminal exposure is so minimal that it could not warrant detention absent fairly extraordinary circumstances. Given the government's statements in service of detaining Mr. Alfozan as a flight risk, and especially the threats of espionage charges, the government should be ordered to disclose to the defense discovery items (1)-(5) no later than November 19, 2026, to inform further deliberations concerning bail.

Put simply, the government cannot have Mr. Alfozan detained on claims about his ties to Saudi Arabia or economic espionage without promptly and fully disclosing all of the relevant evidence to the defense. In addition to the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), California Rule of Professional Conduct 3.8 expressly requires "*timely disclosure* to the defense of all evidence or information known to the prosecutor that the prosecutor knows or reasonably should know tends to *negate the guilt of the accused, mitigate the offense, or mitigate the sentence*, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal." *See* Cal. Rule of Prof'l Conduct 3.8(d) (2018) (emphases added). Timely in this context means at a time when Mr. Alfozan can use the evidence effectively to secure his constitutional right to bail; withholding of exculpatory

evidence that contradicts statements made by the government at the bail hearing would be contrary to fundamental fairness and due process. Accordingly, the defense respectfully urges the Court to order the government to disclose items (1)-(5) no later than 9 a.m. on November 19, 2026, so that Mr. Alfozan may renew his request for release.

In the spirit of transparency, defense counsel has also shared with the government the instant request for a discovery deadline, and the bail reasons underlying it. If Mr. Alfozan is released, counsel has also indicated to the government that he will waive time under the Speedy Trial Act. The defense continues to hope that the government may come to agree that release is appropriate.

**III. Protective Order**

The defense also wishes to raise one issue concerning the protective order. The government proposed to modify the standard trade secret protective order to add a new term concerning defense counsel's use of Artificial Intelligence (AI) products in processing discovery. *See* ECF No. 21 at 8-9.

The government bears the burden of justifying a protective order's terms, and it has not done so yet as to this term. *See* Fed. R. Crim. P. 16(d)(1). The new term requires defense counsel to request permission from the government to use AI products with discovery, and to make certain certifications to the government regarding counsel's use of the AI product. The U.S. Attorney's Office should not be in the business of policing defense counsel's discovery practices, and if it wishes to make changes to the model protective order, it should generally do so through the Court's Criminal Rules and Practice Committee.

As the Court is aware, the ethical use of AI has been the subject of endless continuing legal education trainings for some time now. Undersigned counsel is certainly quite aware of these considerations in this case (of all cases). To facilitate quick discovery, while expressly preserving objection to this restriction, counsel has already voluntarily made some disclosures to the government regarding defense counsel's use of AI, which is consistent with ethical practice. Nevertheless, counsel requests the Court strike the AI term in the protective order until the government meets its burden to justify it.

//

November 16, 2026
Date

RIZK & SHEARER LLP

/S

DAVID W. RIZK
Counsel for Mr. Alfozan